UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
NOUAMANE SIDQUI,                                         :
                                                         :
                              Petitioner,                :
                                                         :                25-CV-9349 (VSB)
              -against-                                  :
                                                         :                **ORDER**
JUDITH ALMODOVAR, in her official                        :
capacity as Acting New York Field Office                 :
Director, U.S. Immigration & Customs                     :
Enforcement, *et al.*,                                   :
                                                         :
                              Respondents.               :
-----------------------------------------------------------X

<u>VERNON S. BRODERICK</u>, United States District Judge:

On November 24, 2025 at 2:00 p.m. I held an Order to Show Cause Hearing in the Thurgood Marshall United States Courthouse, Courtroom 518, 40 Foley Square, New York, NY, 10007. At the hearing, the Government agreed to file a supplemental declaration containing various items discussed during the hearing to facilitate my ruling on this matter, which it filed on December 9, 2025, (Doc. 21). At the hearing, I asked counsel for the Government to consult with DHS and file a supplemental letter regarding the following:

1. The timeline of when ICE lodged a detainer after Petitioner was arrested and when Petitioner was released from NYC Queens Central Booking on March 31, 2025. (Tr. 4:7-24.) The Government's supplemental letter, (Doc. 21) responds that "ICE became aware of the arrest on March 31, 2025 . . . [and] lodged an immigration detainer with NYPD before petitioner was released."

2. The timeline between when Petitioner is alleged to have last complied with the terms of the ATD Program and his arrest on November 7, 2025, including: (1) whether there are any records of Petitioner presenting in person to the BI Incorporated office or elsewhere, (Tr. 7:21-8:7, 11:5-12), (2) whether Petitioner was required to physically check into the BI Incorporated officer or elsewhere, (*id.* at 11:5-12), (3) why Petitioner was terminated from the ATD Program on October 17, 2025 after his alleged failure to comply with the telephonic reporting requirements in February 28, 2025 (*id.* at 10:18-11:12), and (4) why Petitioner reported to the BI Incorporated office on November 7, 2025, (*id.* at 6:5-19). The

    Government's supplemental letter states that Petitioner's failure to make contact after February 28, 2025 was considered a violation of his terms of release and he was subsequently terminated from the ATD Program, although the letter notes that "ICE is unable to determine when it learned of petitioner's noncompliance." This appears to be a response to the third question herein, although it does not explain what occurred between February 28, 2025 and Petitioner's termination from the ATD Program on October 17, 2025. (*See* Doc. 13 ¶ 23 ("On October 17, 2025, Petitioner was terminated from the ATD Program due to his failure to comply with monthly telephonic reporting requirements.").) Moreover, the Government does not respond to the remaining questions regarding the ATD Program.

3. The Warrant for Arrest and Petitioner's arrest, including: (1) whether there were immigration officers present at the BI Incorporated office, (Tr. 11:15-25), (2) whether the warrant for Petitioner's arrest was signed by an immigration officer located at the BI Incorporated office, (*id.* at 12:1-5), (3) what the timing was of Petitioner's arrest and the issuance of the warrant, (*id.* at 12:7-10), (4) whether/how the Government confirmed Petitioner's identity, (*id.* at 12:10-14), (5) what the basis was for Petitioner's arrest, including how it came to the Government's attention that Petitioner had not been complying with the ATD Program (*id.* at 13:4-13:11), (6) whether not complying with the ATD Program is grounds for a noncitizen to be arrested and what ordinarily happens if a noncitizen fails to comply with the terms of the ATD Program, (*id.* at 12:17-13:6), and (7) whether there is any paperwork related to Petitioner's arrest in addition to the Warrant for Arrest, (*id.* at 13:7-11). The Government's supplemental letter states that ICE issued the Warrant for Arrest before Petitioner was arrested, which is a response to the third question herein, but does not respond to the remaining questions regarding the warrant or Petitioner's arrest.

4. Any documentation related to Petitioner's initial release after USCIS made the credible fear determination. (Tr. 26:4-16.) The Government's supplemental letter cites to the Notice to EOIR already in the record, which states that Petitioner was released from ICE custody on "[p]arole," (Doc. 14-5), and states that "ICE is looking for a record identifying the parole authority under which the petitioner was released." The government promises to "submit a supplemental letter if ICE locates additional information." According to the Declaration of Deportation Officer James-Townend, Petitioner appeared at Immigration Court on September 17, 2024, was enrolled into the ATD Program on September 19, 2025, was released from ICE custody on September 20, 2024, and his ATD Program details changed on September 30, 2024. (Doc. 13 ¶¶ 1–13.) However, the Government appears to state that it currently cannot find any records regarding Petitioner's release other than the Notice to Appear and a Form EOIR-33. Thus, the supplemental letter does not attach any documentation relating to Petitioner's initial release, or even any documentation from the Immigration Court.

Therefore, other than the first category of questions regarding Petitioner's arrest by the New York City Police Department and the immigration detainer, several of my questions remain outstanding.

I also asked counsel for the Government to include in its supplemental declaration (1) the two out-of-Circuit cases that counsel mentioned in the hearing which he asserts granted the Government's requested relief and (2) the Government's position on whether it has any specific argument that it believes is material between the decision that Judge Ho recently issued in *Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759 (S.D.N.Y. Nov. 13, 2025) on the issue of whether § 1226(c)(1)(E)(ii) provides for mandatory detention where, as here, criminal charges have been dropped. (Tr. 31:21-32:7, 40:12-24.) The Government has not included either the two cases or their position on whether this case is different from *Torres*, 2025 WL 3168759 in their supplemental letter.

IT IS HEREBY ORDERED that the Government shall file a supplemental letter by **December 12, 2025** with further responses to the questions that are still unanswered, state that it will not be providing responses and why it cannot provide responses, or otherwise identify the status of determining such responses.

While the Government states that "ICE is unable to determine at this time why petitioner appeared at the BI Incorporated office on November 7, 2025," this is an insufficient response. Thus, it is FURTHER ORDERED that the parties shall meet-and-confer and respond, in either the Government's supplemental letter or in a letter from Petitioner, with any information regarding why Petitioner appeared at the BI Incorporated office on November 7, 2025 by **December 12, 2025**.

3

SO ORDERED.

Dated:     December 10, 2025
               New York, New York

_____
Vernon S. Broderick
United States District Judge